IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | | |
|---|---|---|
| JENNIFER BOLIN, individually and on behalf of all others similarly situated, | ) ) | Cause No. CV 09-83-RFC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| ALLSTATE INDEMNITY COMPANY, and all parent, affiliate and subsidiary companies thereof, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Order on the Parties' cross-motions for summary judgment, dated

October 18, 2010, (*Doc. 28*) was entered in error.  Accordingly, **IT IS HEREBY**

**ORDERED** that it be **WITHDRAWN** and replaced by the following.

**I.**   **INTRODUCTION**

This is a class action suit brought by named Plaintiff Jennifer Bolin, and

others similarly situated, against Defendant Allstate Indemnity Company.  Presently

before the Court are Cross-Motions for Partial Summary Judgment.  The motions

are fully briefed and the Court is prepared to rule.

Allstate's motion seeks partial summary judgment on Bolin's claims that Allstate is required to compensate Bolin, and all class members, for attorneys' fees and costs as alleged uncompensated damages under medical payments coverage, uninsured motorist coverage, and underinsured motorist coverage.[1]

Plaintiffs move for partial summary judgment on their claims that Allstate's "programmatic claims adjustment" practice of taking credit for other personal, portable first party insurance benefits when adjusting its insured's claims constitutes *de facto* subrogation.

## II.   BACKGROUND

This case was initiated in Montana's Eighteenth Judicial District Court, Gallatin County, on October 13, 2009.  Allstate  removed to this Court on November 13, 2009.  In representing the putative class, Bolin alleges that on July 1, 2007, she was injured in an automobile accident.  She suffered injuries with medical expenses in excess of $15,000.

Bolin was insured by Allstate with per person per accident coverage of $50,000 underinsured motorist ("UIM") coverage and $5,000 Medical Payments Coverage ("MPC").  Upon Bolin's request, Allstate paid the medical payment limits

---

[1]*AMENDED COMPLAINT ¶¶ 14-23.*

arising from the accident, but refused payment at that time under the UIM coverage.

The tortfeasor was insured by Farmers Insurance, with Bodily Injury ("BI") policy limits of $30,000 per person per accident.  Farmers paid Bolin the $30,000 BI limits without a release of claims against its insured.

At the time of the accident, Bolin was also insured by Sentinel/Hartford Insurance Company ("Hartford") with stackable limits totaling $100,000 for UIM coverage and $10,000 MPC.  Upon Bolin's request, Hartford paid Bolin the $10,000 MPC limits for medical expenses, but Hartford paid nothing under the UIM coverage policy.  At the time of the accident, Bolin was paying premiums to Hartford for UIM and MPC coverage.

In total, Bolin received $45,000 for injuries arising from the July 1, 2007 automobile accident.  In addition, Bolin alleges she incurred $14,499 attorney fees in recovering her losses arising from the accident.[2]   She further alleges that she continues to suffer accident-related pain and limitations in her daily activities.[3]

On March 29, 2010, this Court granted Allstate's Motion to Dismiss the Original Complaint without prejudice.  In granting the motion, this Court rejected

---

[2]*PLAINTIFFS' COMBINED STATEMENT OF GENUINE ISSUES AND STATEMENT S OF UNDISPUTED FACTS, ¶ 13.*

[3]*Id., ¶ 13.*

Bolin's argument that "because she has not been reimbursed for her attorney fees and costs from the tortfeasor, she has not been made whole."[4]  In that same Order, the Court allowed Plaintiffs to renew their claims if Bolin could allege recoverable damages, other than attorney fees and cost, in excess of the payments she had already received.[5]  Bolin has since filed an Amended Class Action Complaint alleging she continues to suffer accident-related pain and limitations in her activities of daily living.

## III.   ANALYSIS

### A.   STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).  Here, the facts are undisputed and since the interpretation of an insurance contract is a question of law, *Modroo v. Nationwide Mut. Ins. Co.,* 191 P.3d 389, 395 (Mont. 2008), the issues raised by these motions are appropriate for summary judgment.

---

[4]*See Doc.# 11, pp 3-4.*

[5]Id.

**B.     DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Allstate seeks judgment as matter of law that it is not required to compensate Bolin, and all members of the class she purports to represent, for attorney's fees and costs as alleged uncompensated damages under MPC, UIM and UM coverage.

In support, Allstate cites the Order of March 29, 2010, wherein this Court held that attorney's fees are not an element of damages that are recoverable in tort.[6]

Bolin's sole response to Allstate's Motion is that she has sufficiently alleged in her Amended Class Action Complaint that she has incurred damages in excess of the underlying BI limits of $30,000.  As such, Bolin asks this Court to deny Allstate's partial summary judgment motion.

Allstate concedes Bolin has alleged damages in excess of $30,000, but asks that the Court enforce its prior March 29, 2010 ruling that attorney's fees are not an element of damages recoverable in tort law.

Having reviewed the Parties' arguments, this Court concludes there is no reason for this Court to reconsider its March 29, 2010 ruling.  Allstate's Motion for Partial Summary Judgment on this issue must therefore be granted.

**C.     PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs allege Allstate's "programmatic claims adjustment" practice of

---

[6]*Doc. #11, pp. 3-4.*

taking credit for other personal, portable first-party insurance benefits when adjusting its insured's claims violates Montana's "made whole" doctrine and constitutes *de facto* subrogation.

In response, Allstate contends it is not attempting to avoid paying any underinsured motorist coverage benefits. Rather, under the "duplicate payments" provision of its MPC and UIM coverages, it has the right to reduce the damages recoverable by other payments Bolin has already received.

As the Court understands it, Bolin does not want Allstate to consider Hartford's $10,000 medical payment coverage in its calculations of damages recoverable as underinsured motorist benefits. Rather, Bolin argues this Court should ignore Hartford's payment so that she may receive that same amount through her underinsured motorist policy with Allstate.

### 1.   CREDITS, DUPLICATE PAYMENTS AND OFFSETS

Bolin, on behalf of the Class, contends that Allstate's act of taking credit for other personal, portable first-party insurance benefits when adjusting constitutes *de facto* subrogation. However, this Court's review of Montana cases reflects support, within the insurance context, for the use of credits, offsets and exclusions on duplicate payments.

In *Farmers Alliance Mut. Ins. Co. v. Miller*, 869 F.2d 509, 513 (9th Cir. 1989), the court looked at Montana's underinsured motorist law and noted that underinsured motorist coverage "presupposes some liability insurance but acts as a gap-filler, ensuring that the insured recovers at least the amount he is insured for, even if the tortfeasor's insurance coverage is deficient." *Id*.   Recovery in excess of the gap between the victim's underinsured motorist coverage and the tortfeasor's liability coverage would not be underinsured motorist recovery at all; it would effectively be recovery under a judicially created collision policy. *Id*.

Although the *Miller* court limited its reasoning to offsets that resulted from liability insurance held by a tortfeasor, it nevertheless acknowledged the possible applicability of offsets from other sources. *Id*.

In *Liedle v. State Farm*, 283 Mont. 129 (1997), the Montana Supreme Court upheld a reduction, under the collateral source reduction statute, of medical payment insurance benefits.   In reaching that conclusion, the Montana Supreme Court noted that the statute did not "authorize collateral source payments to be deducted from the claimant's available underinsured motorist coverage, but authorized that such payments be entered into *the calculation of the claimant's compensable injuries and losses*." *Id., 283 Mont. at 134*.   Further, the *Liedle* Court rejected plaintiff's argument that State Farm's offset was "the equivalent of allowing an insurance

company to subrogate against its own insured . . ." *Id.*, 283 Mont. at 133.

In *Olson v. Daughenbaugh*, 307 Mont. 371 (2001), the Montana Supreme Court held that an employee injured while working for an uninsured employer could not receive benefits from the Uninsured Employers Fund and pursue an independent cause of action against the employer.  In finding for the employer, the Court noted that plaintiff was seeking full compensation for his work-related injury twice–once from the UEF and again from the employer.  *Id.*, 307 Mont. at 375.  The Court concluded Montana law does not allow for  double recovery or duplicate payments of workers' compensation benefits.

Citing its ruling in *Thayer v. Uninsured Employers' Fund*, 297 Mont. 179 (1999), the *Olson* Court noted that its present rationale was consistent with its previous decisions.  The *Olson* Court noted that, in *Thayer*, "[W]e held that the claimant was not entitled to recover from both the UEF and the uninsured employer because the Uninsured Employers' Fund is merely a safety net which stands in the place of the uninsured employer, and the setoff provisions are uniquely necessary to assure some payment to as many uninsured employees as possible." *Olson*, 307 Mont. at 377.  Consequently, a double recovery was not permitted.  *Id.*

Although *Thayer* and *Olson* involved workers' compensation, on the issue of double recovery, this Court can rely on those holdings to conclude that double

payments are not permitted.  Here Plaintiff asks this Court to ignore the $10,000 that she has actually received from Hartford in order to recover that same amount from Defendant.

Further, in *Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington , Ill,* 343 Mont. 279 (2008), the Montana Supreme Court also considered the issue of the "other payments."  In *Newbury*, the plaintiff was struck by another vehicle in the course of his employment.  He subsequently filed a claim for and received worker's compensation medical benefits.  Because his resulting medical expenses were in excess of the benefits paid by the worker's compensation, Newbury turned to his two automobile insurance policies with State Farm, which allowed for $5,000 per policy for medical expenses arising from bodily injury sustained "through being struck as a pedestrian by a motor vehicle."  *Id.*, 343 Mont. at ¶ 9.  Newbury sought to obtain medical payment coverage from both policies in the amount of $10,000.  State Farm paid the $1,175.80 in medical expenses not covered by worker's compensation and denied any further payment.   In their denial, State Farm relied on a provision stating that there would be no coverage "to the extent workers' compensation benefits are required to be payable."  *Id.*   Newbury brought suit attacking the validity of the provision, among others, on public policy grounds.  *Id.*, 343 Mont. at ¶ 12.

The Montana Supreme Court concluded that the clause at issue did not violate public policy.  Specifically, they found that "in Montana, parties to an insurance contract may include provisions that exclude coverage without violating public policy if the exclusion applies to optional, rather than mandatory coverage." *Id.*, 343 Mont. at 288.[7]   The *Newbury* Court went on to state that provisions regarding optional coverage in an insurance contract are "at the sole discretion of the parties to the contract" and not a violation of public policy.  *Id.*   Therefore, where an insured is injured in a vehicle, it is permissible for a policy to limit or even exclude coverage to the extent other primary insurance like that of the driver and/or tortfeasor is available and required to be payable.  *Id.*, 343 Mont. at ¶ 38.

The *Newbury* Court rejected the plaintiff's request that it ignore the worker's compensation benefits he received and give him the full medical payment limits of his auto policy.  Essentially, the *Newbury* Court  recognized State Farm's right to credit what was already paid by the workers' compensation fund in considering what it was liable for under its insured's medical payment policies.  Like the plaintiff in *Newbury*, Bolin asks this Court to ignore payments she has already received in order to trigger her policy's coverage.

---

[7]In Montana, medical payment and underinsured motorist coverage are optional coverage provisions.  M.C.A.  §§ 61-6-103(2), 301(1).  However, uninsured motorist coverage is mandatory unless rejected by the insured.  M.C.A. § 33-23-201.

Most recently, this Court, in *Gettle v. Prop. & Cas. Ins. Co. of Hartford*,[8] followed the line of reasoning stated in *Newbury* and recognized that a provision that prioritized an insurer's obligation to pay med pay, UM and UIM coverage until other primary insurance has been collected up to the policy limits, was not *de facto* subrogation and thus did not violate Montana's public policy.[9]  In *Gettle*, this Court concluded that "excess coverage" provisions in a UIM policy which took into consideration other insurance payments in determining what an insurer owed its insured was not a violation of public policy.

Looking at Bolin's Allstate policy, both her medical payments coverage and underinsured motorist coverage expressly state that no "duplicate payments for the same elements of loss" would be paid under those coverages.[10] Although Defendant has paid the policy limits of Plaintiff's med pay coverage of $5000, it contends that it is not obligated to pay any amounts under Plaintiff's underinsured motorist policy.  In support of this, Allstate notes that its adjuster has found Bolin's total loss to be $42,000.

---

[8] *Gettle* involved the same attorneys as this case.

[9] CV 09-43-RFC (U.S.D.C. Mont., February  9, 2010, *Doc. #17*)

[10] *DEFENDANT'S STATEMENT OF GENUINE ISSUES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, Doc. #26, ¶5, Exhibits A & B.*

The Court notes that Bolin has already received the $30,000 Bodily Injury limits from the tortfeasor, $10,000 Med Pay limits from Hartford Insurance and $5,000 Med Pay limits from Allstate. Based on this, Allstate contends that Bolin has been fully compensated for all recoverable damages. To the extent Bolin seeks to recover any attorneys' fees, Allstate argues, and this Court agrees, that under the American rule and by prior Order this Court, attorneys' fees are not an element of damages that are recoverable in tort.

As evidenced by the aforementioned Montana cases, there has been a long history of recognition in the insurance and workers' compensation arena, of credits, offsets and the exclusion of double recoveries and payments. Our present case is no different. Moreover, the Montana Supreme Court has recognized that "parties to an insurance contract may include provisions that exclude coverage without violating public policy if the exclusion applies to optional, rather than mandatory coverage." *Newbury*, 343 Mont. at 288. The *Newbury* Court went on to state that provisions regarding optional coverage in an insurance contract are "at the sole discretion of the parties to the contract" and not a violation of public policy. *Id.*

## 2.   DE FACTO SUBROGATION CLAUSES

Bolin contends that Allstate's practice of taking credit for other personal, portable, first party insurance benefits when adjusting its insured's claims

constitutes *de facto* subrogation and is therefore contrary to Montana law.

Extensive discussion on the issue of subrogation and the "made whole" doctrine

was made in this Court's opinion in the separate case of *Gettle v. Prop. & Cas. Ins.*

*Co. of Hartford*.  As such, a reiteration of the state of the law on subrogation will

not be made here.

      Plaintiffs allege that Allstate's present action of taking credit for other MPC,

UM and/or UIM coverage constitutes *de facto* subrogation and denies coverage

where Plaintiffs have paid valuable consideration.  The consequence of Allstate

taking credit for another insurance company's policy, according to Plaintiffs, are

that Allstate has effectively subrogated before Plaintiffs have been made whole.

      In researching cases that discuss the concept of *de facto* subrogation as a

cause of action, this Court was only able to find two cases:  *Thayer v. Uninsured*

*Employers' Fund*, 297 Mont. 179 (1999) and *Blue Cross and Blue Shield of*

*Montana, Inc. v. Montana State Auditor*, 352 Mont. 423 (2009).  Both cases come

from the Montana Supreme Court.

      In *Thayer*, Uninsured Employers' Fund's (UEF) was paying death benefits to

the widow of an employee whose employer carried no workers' compensation

insurance. The widow brought suit against the employer and the employer settled

for $100,000.  Upon notice of the settlement with the employer, UEF informed

Thayer that she was no longer entitled to further benefits. UEF claimed a statutory right of setoff to the remaining balance due ($74,301) against the $100,000 settlement from the employer.  UEF did not seek recovery of any benefits paid prior to Thayer's settlement with her husband's employer.  *Id*, 297 Mont. at 181.

Thayer contended that UEF was not applying a statutory right of setoff. Rather, UEF was claiming a subrogation interest in the settlement she received from the employer.  *Id.*  According to Thayer, this allowed UEF to have a *de facto* subrogation interest before she had been made whole.  *Id.*

Ultimately, the Montana Supreme Court concluded that its prior subrogation cases did not apply to *Thayer* because the UEF was not an insurer and did not receive premiums from the employer.  Rather, it was a legislatively created source to minimize the hardships of an injured worker that is unable to get workers' compensation benefits and was not intended to provide full payment.  *Id.*  Further, because the UEF was "merely a safety net" and stands in the place of the uninsured employer, it was reasonable to condition UEF's obligations "on the extent to which the employer fails to provide compensation."  *Id.*, 297 Mont. at 185.

In *Blue Cross Blue Shield* ("BCBS"), the Montana Supreme Court affirmed the Montana State Commissioner of Insurance's decision to disapprove Blue Cross's insurance forms that contained policy language wherein BCBS would not

pay health care benefits to its beneficiaries for: "services, supplies, and medications provided to treat any injury to the extent the member receives, or would be entitled to receive where liability is reasonably clear, benefits under an automobile insurance policy. . ." *Id.* 312 Mont at 425.  In finding for the State Commissioner, the Montana Supreme Court concluded  that, in the health insurance context, a provision that allowed Blue Cross Blue Shield to "avoid any payment of benefits to its insured if the insured is 'entitled to receive' benefits from any other auto or premises liability policy, whether or not the insured actually receives any of those benefits, and whether or not the insured has been made whole," would violate Mont. Code Ann. §§ 33-30-1101 & 33-30-1102 and unlawfully allow BCBS to claim subrogation before its insured had been made whole.  *Id.* 312 Mont. at 429.

It is evident that the offending action and language that the *Blue Cross Blue Shield* Court's conclusion was focused on was the avoidance of payments of benefits when BCBS' insured was "entitled to receive" benefits from another source, not whether BCBS's insured actually received benefits from another source. *Id.*    Here, there is no evidence in the record that Allstate denied UIM coverage because Bolin was entitled to receive benefits from another auto or premises liability policy.  Consequently, *Blue Cross Blue Shield* is inapplicable to this case.

More importantly, the discussions of *de facto* subrogation in both these cases were dicta.  Neither cases' holding explicitly recognized nor created *de facto* subrogation as a new cause of action.   This is in contrast to the cases cited by the Court that expressly recognize the application of credits, offsets and exclusion of duplicate payments in the insurance and workers' compensation arena.

For the foregoing reasons, this Court concludes that Allstate's "programmatic claims adjustment" practice of taking credit for other personal, portable first-party insurance benefits when adjusting its insured's claims is a recognized legal practice.  Further, as is the case here, parties to an insurance contract may include provisions that exclude coverage without violating public policy if the exclusion applies to optional, rather than mandatory, coverage.

Following the reasoning of *Gettle* and *Newbury*, this Court concludes that Allstate merely used its freedom to contract in order to preclude the double payments.  Plaintiffs neither argue, nor does the record reflect, that beyond taking the $10,000 credit from Hartford's med pay benefits, Allstate has refused to compensate any additional losses under Plaintiff's UIM policy.  Plaintiff's Motion for Partial Summary Judgment must therefore be denied.

For those reasons, IT IS HEREBY ORDERED that:

1.    Defendant's Motion for Partial Summary Judgment (*Doc. #14* ) is
      GRANTED;

2.    Plaintiff's Motion for Partial Summary Judgment (*Doc. #19* ) is
      DENIED.

DATED this 19th day of October, 2010.

                                  /s/ *Richard F. Cebull*_____
                                  RICHARD F. CEBULL
                                  U.S. DISTRICT JUDGE